IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERT L. JOHNSON, Jr., | : | No. 4:02-cv-2347 |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Mannion) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social | : | |
| Security, | : | |
| Defendant | : | |

## MEMORANDUM

### March 13, 2007

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

On January 11, 2007, Magistrate Judge Mannion filed a Report and Recommendation (doc. 22) reviewing the appeal of the Commissioner's decision to deny Plaintiff Albert L. Johnson, Jr.'s ("Plaintiff") claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act ("Act"), respectively.[1]  Magistrate Judge Mannion found that substantial evidence existed to support the Commissioner's decision and recommended that the appeal be denied.

---

[1] Michael J. Astrue became the Acting Commissioner of Social Security, effective February 12, 2007 to succeed Linda S. McMahon.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

1

On January 29, 2007, Plaintiff filed objections to the Magistrate Judge's report.  (Rec. Doc. 23).  This matter is now ripe for disposition.

## PROCEDURAL HISTORY:

The Plaintiff previously filed an application for DIB and SSI on April 24, 2001, with a protective filing date of May 18, 2000, alleging disability since March 23, 2000, due to back pain and a herniated disc.  (Transcript 122, 125).  A hearing was held before an Administrative Law Judge ("ALJ") and the ALJ denied Plaintiff's claims.  (TR. 8).  Plaintiff requested review of the ALJ's decision by the Appeals Council.  This request was denied on July 31, 2001, and Plaintiff did not pursue that claim any further.  (TR. 8).

The Plaintiff again protectively filed an application for DIB and SSI on October 20, 2002.  The state agency denied his claim initially.  (TR. 8). The Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ") on July 15, 2002.  At the hearing, the Plaintiff, represented by counsel, testified.  A vocational expert ("VE") also testified and the ALJ issued a decision on August 5, 2002 denying the Plaintiff's claims.  (TR. 53-60).

The Plaintiff filed a request for review of the ALJ's decision by the Appeals Council. (TR. 98).  The request was denied by the Appeals Council and Plaintiff filed a civil action in the United States District Court for the Middle District of

Pennsylvania.  (TR 100-102, 104). The Commissioner filed a motion to remand the case, with which the Plaintiff concurred.  (TR. 109-110).  The case was remanded to the Commissioner for further administrative proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g)[2], because the cassette tape of the July 15, 2002 hearing contained many inaudible areas and a complete transcription could not be made.  (TR. 114).

A supplemental hearing was held before an ALJ on September 29, 2004.  At that hearing, the Plaintiff, represented by counsel, testified, as well as the Plaintiff's wife and a VE.  (TR. 305).  The Plaintiff was denied benefits pursuant to the ALJ's decision of November 19, 2004.  (TR. 5-15).  Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied, making the

---

[2] The sixth sentence of §405(g), Judicial Review, reads:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and any testimony upon which the Commissioner's action in modifying or affirming was based.

ALJ's decision the final decision of the Commissioner.

The ALJ's decision is the subject of the instant appeal.  The Plaintiff contended that the ALJ erred in 1) failing to give significance to the treating source opinions of Dr. Murtland, Dr. Saba, Dr. Hoda, and Dr. Satti; 2) failing to present a hypothetical question to a VE that identified all of the Plaintiff's impairments and limitations as indicated by the record, and; 3) failing to properly address the Plaintiff's work history.

Magistrate Judge Mannion found that 1) the ALJ's finding as to Plaintiff's limitations was not based on his lay opinion, but on a reasoned assessment of all the medial and other evidence of record, and that substantial evidence supported the finding; 2) the hypothetical question posed to the VE by the ALJ included all the Plaintiff's limitations as supported by the record, and; 3) the ALJ has properly addressed the Plaintiff's work history.

On January 29, 2007, the Plaintiff lodged objections to the Magistrate Judge's report.  (Rec. Doc. 23).  Plaintiff argues that the Magistrate Judge erred by finding that the ALJ had given significance to the opinions of the treating physicians Dr. Murtland, Dr. Hoda and Ddr. Satti.  (Rec. Doc. 23 at 14).

**STANDARDS OF REVIEW**:

    **A.    Review of Magistrate Judge's Report**

When objections are filed to a report of a magistrate judge, we make a *de novo* determination of those portions of the report or specified proposed findings or recommendations made by the magistrate judge to which there are objections.  See United States v. Raddatz, 447 U.S. 667 (1980); see also 28 U.S.C. §636(b)(1); Local Rule 72.3l.  Furthermore, district judges have wide discretion as to how they treat recommendations of a magistrate judge.  See id.  Indeed, in providing for a *de novo* review determination rather than a *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. See id., see also Mathews v. Weber, 423 U.S. 261, 275 (1976); Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984).

**B.    Review of the Denial of Disability Benefits**

When reviewing the denial of disability benefits, the Court must determine whether the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  It is less than a preponderance of the

evidence but more than a mere scintilla.  <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).

To receive disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

### C.    Eligibility Evaluation Process

A five-step evaluation process is used to determine if a claimant is eligible for disability benefits.  <u>See</u> 20 C.F.R. § 404.1520.  <u>See also</u> <u>Plummer v. Apfel</u>, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a claimant is not disabled at any point in the five-step sequential process, the review does not proceed.  20 C.F.R. § 404.1520.

Step one requires a claimant to establish that he has not engaged in

"substantial gainful activity."  20 C.F.R. § 404. 1520(b).  Step two is an evaluation

of whether the claimant has a severe impairment.  20 C.F.R. § 404.1520(c).  At

step three, the Commissioner must then determine whether the claimant's

impairment or combination of impairments meets or equals those listed in

Appendix 1, Subpart P, Regulations No. 4.  20 C.F.R. § 404.1520(d).

If the Commissioner determines that the claimant's impairment does not

meet or equal a listed impairment, the Commissioner must continue with the

sequential evaluation process and consider whether the claimant has established

that he is unable to perform his past relevant work.  20 C.F.R. §§ 404.1520(e)-(f).

The claimant bears the burden of demonstrating an inability to return to his past

relevant work.  Plummer, 186 F.3d at 428.  If the claimant is able to demonstrate

this, then the burden of proceeding shifts to the Commissioner, at step five, to

demonstrate that other jobs exist in significant numbers in the national economy

that the claimant is able to perform, consistent with his medically determinable

impairments, functional limitations, age, education and work experience.  20

C.F.R. §§ 404.1520(g), 404.1560(c).  The Commissioner is also to consider the

claimant's stated vocational factors.

**FACTUAL BACKGROUND**:

Plaintiff's Work History and Injury

The Plaintiff, forty-seven years old at the time of the ALJ's decision, was considered to be a "younger individual" under the Regulations.  20 C.F.R. § 404.1563 and 416.963; (TR. 15, 122).  Plaintiff has a high school education and previously worked assembling countertops and as a solderer at an IBM production facility.  (TR149, 182)  Plaintiff last worked on September 21, 1998.  (TR. 77). Plaintiff receives medical assistance.  He alleges disability since March 23, 2000, due to a back impairment and anxiety.

Plaintiff testified that he experiences constant pain and weakness in his back. (TR. 322, 324).  He described the pain as stabbing pain and he experiences feelings of heat on his back.  (TR. 324).  Plaintiff testified that he goes to bed at night between 10:00 p.m. and 11:00 p.m. and he wakes up between 2:00 a.m. and 4:00 a.m.  (TR. 312-313).  He stated that he has trouble falling asleep and wakes up approximately every hour.   (TR. 314).  When he wakes up, Plaintiff makes coffee, lays on the couch, lays on the floor, and watches television.  He testified that he does not do any chores around the house.  He does not vacuum, do laundry, dust, or take out the garbage.  (TR. 319).  He cooks occasionally for his son. (TR. 314). Plaintiff testified that he only drives if he has to take his son to work, about twice a week, or if he has to drop off or pick up his wife.  (TR. 315, 320).

Plaintiff testified that he can lift three to five pounds, he can sit for ten to

fifteen minutes comfortably, he can walk ten to fifteen yards, and he can stand for fifteen minutes. (TR. 311-312). Plaintiff stated that he could push and pull things across a table with his hands if they did not weigh anything, however he stated that he could not do so all day. (TR. 328). Plaintiff stated that he cannot reach over his head; he cannot stoop, squat, bend or kneel; he sometimes has trouble balancing; he is sensitive to dust; he could not work on uneven or hard floors; the cold and dampness bother him; he has problems getting along with others; and he needs instructions repeated to him several times. Plaintiff also wears a hearing aid and glasses. Plaintiff stated that he could work around chemicals. (TR. 328-330).

Plaintiff relieves his pain by taking medications or laying on the floor. (TR. 232). He testified that he may take Naproxen once a day, but he does not take it five times a week. (TR. 310). He also takes Lexapro (once a day for depression), Advil (twice a day for headaches), Vioxx, and Darvocet. (TR. 310, 320). Plaintiff received one epidural injection. (TR. 320). Plaintiff has not received a lot of medical treatment for his conditions because he cannot afford it. He recently received medical assistance and began treating with doctors. (TR. 332-333). Plaintiff never had surgery for his back injury. (TR. 310).

Over the past few years Plaintiff has gained a lot of weight and was diagnosed with diabetes. Plaintiff's doctor advised that he follow a diabetic diet.

Plaintiff stated that he does not follow the diet; he stated, "I just don't care anymore." (TR. 321).

A vocational expert, Gerald Keating, testified at the ALJ hearing. (TR. 334). The VE testified that Plaintiff's work as a countertop assembler was classified as semi-skilled work in the medium duty physical exertional level, SVP three.[3] (TR. 334). The Plaintiff's work as a solderer was classified as semi-skilled work in the sedentary level, SVP two to three. Sedentary work was defined by the VE as "lifting up to ten pounds on an occasional basis with frequent lifting or carrying negligible weights such as one to three pounds. Examples would be small dockets, ledgers or hand tools, traditionally using your upper extremities for more of a fine manipulation, finger dexterity type of activity. The job does require walking to perform duties but generally not to exceed 2.5 hours in an eight-hour workday, and you are generally seated for at least 66 percent of the eight-hour shift." (TR. 335).

The ALJ asked the VE, if he were to find that the Plaintiff could perform sedentary work that permitted him to sit and stand at his option, did not require overhead reaching, and did not involve excess dust, fumes, or exposure to extreme temperature and humidity, could the Plaintiff perform his past relevant work. The

---

[3] Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

VE found that the Plaintiff would still be able to perform his past relevant work as a solderer but he would not be able to perform the work as a countertop assembler. (TR. 336).  The VE also stated that if the ALJ accepted the Plaintiff's testimony as presented, then the Plaintiff would not be able to perform his past relevant work.

Medical Background

On September 24, 1998, Plaintiff underwent an MRI of his lumbar spine that revealed well maintained disc spaces and vertebral bodies; peri-articular sclerosis of the right sacroiliac joint; and possible sacroiliitis. (TR. 209).  On December 4, 1998, Plaintiff underwent another lumbar MRI that revealed minimal central protrusions at L4-5 and L5-S1 which did not cause canal or neuroforaminal stenosis.  (TR. 12, 191).

In 1999, Plaintiff treated with Albert M. Murtland, M.D. for back pain.  (TR. 200-204).  In April and October 1999, Dr. Murtland stated that he did not think Plaintiff needed any type of surgery.  (TR. 201, 204).  In July 1999, Dr. Murtland opined that Plaintiff could not return to any type of gainful employment.  (TR. 200-201).  He stated that Plaintiff performed a heavy manual job and Dr. Murtland did not believe that Plaintiff could return to this work.  (TR. 200).

In November 1999, Dr. Murtland noted that he reviewed Plaintiff's MRI of October 11, 1999.  The MRI revealed degenerative spondylosis and disc

herniations without spinal canal stenosis or nerve root impingement.  (TR. 206).

Other slides included a May 1999 x-ray of the left elbow which showed no

evidence of a fracture.  (TR. 207) and a January 5, 2000 x-ray of Plaintiff's left

knee was "stable, status-post patellectomy with mild osteoarthritic changes. (Tr.

205).

On July 22, 2001, Plaintiff underwent a consultative examination with

Adnan Saba, M.D. (TR. 223-226).  Dr. Saba noted that Plaintiff's December 4,

1998 MRI showed minimal central protrusions wit no canal or neural foramental

stenosis.  (TR. 223).  He also noted that Plaintiff's October 11, 1999 MRI showed

degenerative spondylosis, mild central disc herniations, and no spinal canal

stenosis or nerve root impingement.  (TR. 223).  Dr. Saba noted that Plaintiff's

spine was tender, a straight leg raising test was negative, he walked with some

hesitation, used a cane to walk, but his reflexes were normal.  (TR. 224).

Dr. Saba completed a Medical Source Statement of Claimant's Ability to

Perform Work-Related Physical Activities on July 20, 2001.  (TR. 225-226).  He

found that Plaintiff could occasionally lift two to ten pounds, and occasionally

carry two to three pounds.  (TR. 226).  He could stand and walk for one hour or

less, cumulatively, in an eight-hour day and he required a cane to help him walk.

(TR. 226).  Plaintiff could sit for one hour and was limited with pushing and

pulling in his upper and lower extremities.  (TR. 226).  Dr. Saba found that

Plaintiff could never bend, kneel, stoop or crouch and that he could occasionally

balance and climb.  (TR. 225).  Dr. Saba also found that Plaintiff had limitations in

reaching, handling, fingering, feeling, seeing, hearing, speaking, tasting/smelling,

and continence; and he could not climb or move machinery.  (TR. 225).

On January 7, 2002, Tahirul Hoda, M.D. completed a Multiple Impairment

Questionnaire, diagnosing Plaintiff with low back pain and bulging discs.  (TR.

235).  Dr. Hoda found that Plaintiff could sit and stand/walk for zero to one hours

and he would have to move around every half-hour.  (TR. 237).  Dr. Hoda found

that Plaintiff could frequently lift and carry zero to five pounds.  (TR. 238).  Dr.

Hoda also found that Plaintiff has significant limitations in doing repetitive

reaching, handling, fingering or lifting. (TR. 238), but has no limitations in

grasping, turning or twisting objects; no limitations using his fingers/hands for fine

manipulations; and moderate limitations in using his hands/arms for reaching

overhead. (TR. 238-239).  Dr. Hoda found that Plaintiff's symptoms would

increase if he were placed in a competitive work environment; he would require

unscheduled breaks and he would miss work more than three times a month due to

his condition.  (TR. 240-241).

Saeed A. Bajwa, M.D. saw Plaintiff on March 6, 2002 for a neurosurgical

13

evaluation.  (TR. 243).  Plaintiff reported that his pain gets worse with activity and he gets some relief with rest.  (TR. 243).  Plaintiff denied any weakness or pain in his left leg.  (TR. 243).  Dr. Bajwa noted that physical therapy has not significantly helped the Plaintiff and the Plaintiff takes a nonsteroidal anti-inflammatory medication along with his pain medication.

Plaintiff entered Dr. Bajwa's office without acute distress or limp although he favored the right leg.  (TR. 244).  On physical examination, Dr. Bajwa found that Plaintiff's alignment and curvature of the spine were normal, he had paraspinal muscle spasm with some tenderness, a positive straight leg raising test on the right and negative on the left, negative femoral stretch, Patrick's maneuver sign, and his range of movement of the lumbosacral spine was restricted in lateral rotation and lateral bending on the right side.  (TR. 244).  Dr. Bajwa's diagnostic impressions were right L5 radiculitis secondary to bulging disc with degenerative disc disease at L4-5 and there was no disc herniation otherwise noted.  (TR. 245).  Dr. Bajwa recommended epidural blocks and prescribed Relafan, Darvocet and physical therapy.  (Tr. 245).

Plaintiff again treated with Dr. Hoda in May 2002. (TR. 288-289).  On physical examination, Plaintiff had full range of motion of the extremities, normal range of motion about the cervical axis, range of motion was preserved through the

shoulders bilaterally, range of motion of the lumbar spine as restricted on lateral bending on the right, and range of motion of the hips was preserved.  (TR. 288-289).  A straight leg raising test was positive on the right and negative on the left, and Plaintiff's patellar reflexes were normal.  (TR. 288)

Plaintiff was treated by E.J. Pilek, M.D. and Christine Vough, L.S.W. for a depressed mood from January 2002 to April 2002 at Norther Tier Counseling.  (TR. 259-263).  He was diagnosed with adjustment disorder with depressed mood.  (TR. 260).  Dr. Pilek his Global Assessment of Functioning Score (GAF) at 55.[4]  (TR. 260).  A mental status examination revealed a neat appearance, fair hygiene, normal motor movements, cooperative manner, appropriate speech, intact social processes, depressed mood, related affect, no hallucinations, no delusions, oriented to person, place and time, unimpaired recent and remote memory, fair insight and judgment, average intelligence, impulse control, good motivation and no suicidal or homicidal ideations.  (TR. 261).

Plaintiff received psychotherapy at Tioga County Department of Mental Hygiene from Venkala Satti, M.D. and Barbara J. Checchia, C.S.W.  (TR. 303).

---

[4] A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994(DSM-IV)).

Their Axis I diagnoses were major depressive disorder (single episode, severe without psychotic features) and generalized anxiety disorder. (TR. 303). They assessed a GAF score of 50-55. (TR. 303). Dr. Satti noted that Plaintiff's back injury resulted in a loss of physical functioning, chronic pain, loss of long term employment and financial hardship. (TR. 303). Dr. Satti stated, "[d]ue to the chronicity and level of severity of the patient's current symptomatology, it is the opinion of the undersigned that he is currently unable to work." (TR. 303).

State Agency Physician's Report

Gerald A. Gryczko, M.D., a state agency physician, reviewed Plaintiff's records on September 26, 2001, and completed a Residual Functional Capacity (RFC) assessment. (TR. 227-234). Dr. Gryczko diagnosed Plaintiff with back pain. (TR. 227). Dr. Gryczko found that Plaintiff could occasionally lift up to ten pounds; frequently lift and/or carry up to ten pounds; stand and/or walk, with normal breaks, at least two hours in an eight-hour workday; sit, with normal breaks, for about six hours in an eight-hour workday; and push and/or pull with limits in the lower extremities. (TR. 228). Dr. Gryczko found that Plaintiff could occasionally climb, balance, stoop, and crouch. (TR. 229). He found that Plaintiff could never kneel or crawl. (TR. 229). Dr. Gryczko found there were no manipulative limitations, no visual limitations, and no communicative limitations.

He found Plaintiff had to avoid wetness, vibrations and hazards (such as machinery and heights).  (TR. 231).  Dr. Gryczko also found that Plaintiff could have unlimited exposure to extreme cold, heat, humidity and noise.  (TR. 231).  Dr. Gryczko found that Plaintiff alleged severe back pain radiating to his legs.  Dr. Gryczko noted that Plaintiff is able to walk without his self-prescribed cane.  Dr. Gryczko ultimately found Plaintiff only partially credible.  (TR. 232).

**DISCUSSION:**

As noted earlier within this Memorandum, Plaintiff maintained that the ALJ erred in three different areas when denying his disability claim.  Magistrate Judge Mannion reviewed the Plaintiff's contentions that the ALJ erred and concluded that the ALJ did not.   Plaintiff now objects to the Magistrate Judge's report on only one of the original three grounds. We shall discuss the merits  of Plaintiff's objections as well as the portion of the Magistrate Judge's report to which the Plaintiff does not object.

**1.    Whether the ALJ erred in failing to give significance to the**

**treating source opinions of Dr. Murtland, Dr. Satti and Dr. Hoda**

Plaintiff objects to the portion of the Magistrate Judge's report that concluded the ALJ carefully considered the treating source opinions of Dr. Murtland, Dr. Satti and Dr. Hoda, yet determined that the non-examining

consulting physician's report of Dr. Gryczko was more convincing.  Within the

report, Magistrate Judge Mannion found that "the ALJ's finding as to Plaintiff's

limitations was not based on his lay opinion, but on a reasoned assessment of all of

the medical and other evidence of record.  Substantial evidence supports this

finding."  (Rec. Doc. 22 at 18).

In the case of <u>Morales v. Apfel</u>, 225 F.3d 310 (3d Cir. 2000), the United

States Court of Appeals for the Third Circuit announced the standard for

evaluating the opinion of a treating physician in social security cases.  The court

stated:

> A cardinal principal guiding disability eligibility determinations is that
> the ALJ accord treating physicians' reports great weight, especially
> "when their opinions reflect expert judgment based on a continuing
> observation of the patient's condition over a prolonged period of
> time." <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir. 1999)(quoting
> <u>Rocco v. Heckler</u>, 826 F.2d 1348, 1350 (3d Cir. 1987)) . . . Where, as
> here, the opinion of a treating physician conflicts with that of a non-
> treating, non-examining physician, the ALJ may choose whom to
> credit but "cannot reject evidence for no reason or for the wrong
> reason." <u>Plummer</u>, 186 F.3d at 429 (citing <u>Mason v. Shalala</u>, 994
> F.2d 1058, 1066 (3d Cir. 1993)).  The ALJ must consider the medical
> findings that support a treating physician's opinion that the claimant is
> disabled.  <u>See</u> <u>Adorno v. Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994).  In
> choosing to reject the treating physician's assessment, an ALJ may not
> make "speculative inferences from medical reports" and may reject "a
> treating physician's opinion outright only on the basis of contradictory
> medical evidence" and not due to his or her own credibility
> judgments, speculation or lay opinion.  <u>Plummer</u>, 186 F.3d at 429;
> <u>Frankenfield v. Bowen</u>, 861 F.2d 405, 408 (3d Cir. 1988) . . .

Furthermore, an ALJ is required to evaluate every medical opinion received in aid of rendering a disposition.  <u>See</u> 20 C.F.R. § 404.1527(d).  Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight an ALJ will give to that opinion.  <u>See</u> 20 C.F.R. § 404.1527(d)(3).  While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. <u>See</u> 20 C.F.R. § 404.1527(d).  Automatic adoption of the opinion of the treating physician is not required.  <u>See</u> <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir. 1991).

Our review of the ALJ's decision reveals that Plaintiff's objection is meritless.  As previously noted, an ALJ must consider all of the medical opinions before him, and if he chooses to reject any such opinions, he must provide a reason.  A fair reading of the ALJ's decision clearly indicates that the ALJ did not *reject* or decline to give significance to the opinions of Dr. Hoda, Dr. Murtland or Dr. Satti when rendering his decision.  In fact, Dr. Hoda's findings were discussed in detail by the ALJ.

The crux of the ALJ's decision that the Plaintiff has an RFC to perform a significant range of sedentary work, a decision with which Plaintiff takes issue, is that Dr. Gryczko's report and findings are *consistent with* and *supported by* the

"great weight" of the documentary medical evidence.  (TR. 13).  To render this

conclusion, the ALJ carefully considered the medical opinions before him.  The

Plaintiff's position, that the ALJ could only have found Dr. Gryczko's report

compelling if and only if the ALJ rejected the treating source opinions, is plainly

without merit.  The ALJ did not ignore the medical evidence before him; he simply

found that the evidence did not support the conclusion about the extent of

Plaintiff's limitations.

An ALJ's determination does not end upon a finding of whether a claimant

has a substantial impairment.  The five-step sequential process requires an ALJ to

determine whether, in light of the claimant's impairment, is capable of performing

his past relevant work or other type of work within the claimant's RFC.  In this

matter, the ALJ found that the Plaintiff did have severe impairments, however they

were not severe enough to meet or equal, either singly or in combination, the

criteria for establishing disability under the listed impairments.  Following this

step, the ALJ found that the Plaintiff was able to perform his past relevant work as

a solderer and that he had the RFC to perform a significant range of unskilled

sedentary work with some limitations.

We find that the ALJ's findings were supported by substantial evidence,

inasmuch as we find that the evidence discussed by the ALJ within his decision is

"relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 522 (1988). Accordingly, the Plaintiff's objection to the Magistrate Judge's report is overruled.

**2.      Whether the ALJ erred in failing to present a hypothetical question to a vocational expert that identified all of the Plaintiff's impairments and limitations as indicated by the record.**

Magistrate Judge Mannion found within his report, and we agree, that the hypothetical question posed to the VE by the ALJ included all of Plaintiff's limitations as supported by the record. Particularly, the ALJ specifically asked the VE to define sedentary work, and posed a hypothetical question regarding the Plaintiff's ability to perform that type of work. (TR. 335-336). Furthermore, the ALJ was entitled to make a credibility determination regarding the Plaintiff's testimony, and disqualify from use within the hypothetical question any evidence not supported by the record, including assertions made by the Plaintiff that the ALJ found uncredible. <u>See</u> <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 555 (3d Cir. 2005)(a claimant's assertion may be "reasonably discounted by the ALJ, so that the hypotheticals submitted to the vocational expert include all of the limitations credibly established by the record"). Accordingly, the ALJ was entitled to discount the Plaintiff's assertions when crafting the hypothetical question, and the question

posed included all of the Plaintiff's limitations as supported by the record.

3.      **Whether the ALJ erred in failing to properly address the Plaintiff's work history.**

Magistrate Judge Mannion found that the ALJ did not fail to properly address the Plaintiff's work history.  Magistrate Judge Mannion reviewed the record regarding the Plaintiff's work history, and determined that the ALJ did not discount the Plaintiff's work history, a finding with which we wholly agree. Furthermore, Magistrate Judge Mannion again notes that the ALJ found that the Plaintiff's testimony regarding his symptoms, including pain, was only partially credible because it was, to a certain extent, inconsistent with and not fully supported by the documentary evidence.  We agree with the Magistrate Judge's well-reasoned conclusion, and find that the ALJ did not discount the Plaintiff's work history and was entitled to make a credibility determination regarding the Plaintiff's testimony.

## CONCLUSION

Accordingly, for the foregoing reasons, the Plaintiff's objection to the Report and Recommendation of Magistrate Judge Mannion is overruled.  We shall adopt the report in its entirety and shall deny the Plaintiff's appeal.  An appropriate Order shall issue.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge